IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* WILLIE COOLEY )<br><br>        Plaintiff, )<br>v. )<br><br>CAROLINA WRECKING, INC,<br>CHARLES DOWEY, individually,<br>and<br><br>FENCON, INC.<br><br>        Defendants. ) | Case No.: 2:17-cv-276-RMG<br><br>**COMPLAINT**<br>**FILED UNDER SEAL**<br>Pursuant to 31 U.S.C. § 3730<br>False Claims Act |

COMES NOW Willie Cooley, Plaintiff-Relator, and respectfully submits this Complaint, on behalf of himself and the United States of America, against Defendants Carolina Wrecking, Inc., Charles Dowey, individually, and Fencon, Inc., (hereinafter referred to together as the "Defendants"), and alleges as follows:

**INTRODUCTION**

1. Defendants presented false or fraudulent claims for payment to the Defense Finance and Accounting Service (DFAS) of the U.S. Government.

2. Plaintiff brings this action against Defendants to recover damages and civil penalties, pursuant to the *qui tam* provisions of False Claims Act ("FCA"), 31 U.S.C § 3729 *et seq.*, common law fraud, and equitable theories of unjust enrichment and payment by mistake, for the false or fraudulent claims Defendants knowingly made to the U.S. Government.

3. This action includes claims brought under the *qui tam* provisions of False Claims Act ("FCA"), 31 U.S.C § 3729 *et seq.*, to recover treble damages, civil penalties and all other

1

relief available under the Act arising from false statements and claims made by the Defendants, acting individually and jointly, to the United States Government.

4. The False Claims Act, as amended, provides that any person who knowingly submits a false or fraudulent claim to the United States Government for payment or approval is liable for a civil penalty for each false claim, plus three times the amount of damages sustained by the government for each claim. See 31 U.S.C. § 3729(a).

5. Defendants submitted bills, invoices and statements demanding payment of funds to the United States of America owing under contracts entered into pursuant to the McNamara-O'Hara Service Contract Act, 41 U.S.C. §§ 351-358 ("SCA"). The SCA requires contractors and subcontractors performing services on prime contracts in excess of $2,500 to pay service employees in various classes no less than the wage rates and fringe benefits found prevailing in the locality. The Department of Labor determines these "prevailing wages" and issues Wage Determinations to be included as binding terms of applicable federal contracts under the SCA.

6. Defendants failed to pay Relator and other employees under the Contract the required "prevailing wages" set by the Department of Labor, but Defendants then knowingly submitted bills, invoices and statements to the U.S. government certifying that it was in compliance with the SCA, as more specifically described herein.  Defendants routinely, continuously, and illegally "shorted" Relator and other similarly situated employees, keeping the extra amounts for themselves.

7. Submitting false certifications regarding contractors' failure to pay prevailing wages has been affirmed as in violation of the False Claims Act. *See, e.g.*, *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186 (D.D.C. 2011); *United States ex rel. Plumbers & Steamfitters Local Union No. 38 v. C.W. Roen Constr. Co.*, 183 F.3d 1088, 1092 (9th Cir. 1999)

("We have no doubt … that a false certification that workers have been paid at the legally required wage rate may give rise to liability under the FCA."); *cf. United States ex rel. Wall v. Circle C Construction, LLC*, 697 F. 3d 345 (6th Cir. 2012) (affirming finding of False Claims Act violation for certifying but then failing to pay prevailing wages under Davis-Bacon Act); *see also Barber v. Doster Construction Company, Inc. et al.*, Case No.: 2:05-cv-01287-UWC (N.D. Ala., filed 06/14/2005).

8.     Consequently, Defendants are liable under the False Claims Act for payments received under these contracts. *See, e.g., United States ex rel. Wall v. Circle C Construction, LLC*, 697 F. 3d 345 (6th Cir. 2012); *United States v. TDC Mgmt. Corp., Inc.*, 288 F.3d 421, 428 (D.C. Cir. 2002) ("[I]f the government can show it relied on representations in a contractor's progress reports in deciding to make payments, those payments may constitute damages under the Act.").

9.     Relator seeks to recover damages, civil penalties, and attorneys' fees for Defendants' multiple submissions of false claims to the Government, as set forth herein.

## PARTIES

10.     Willie Cooley ("Relator") brings this action on behalf of the United States of America. Relator was formerly employed by Defendant Carolina Wrecking as a heavy duty dump truck driver.

11.     Defendant Carolina Wrecking, Inc., ("Carolina Wrecking"), according to its website, www.carolinawrecking.com, has been "in the demolition business for more than fifty years." It is a for-profit corporation organized under the laws of the state of South Carolina and has appointed Charles Dowey as its registered agent for service of process with an address of Rt. 7 Box 647-A, Columbia, SC. Carolina Wrecking is authorized to conduct and has conducted

business in the state of South Carolina at times material hereto. Its website lists its address as 141 Cort Road, Columbia, SC, 29203.

12. Charles Dowey is the President of Carolina Wrecking, Inc., and is, upon information and belief, the majority owner/shareholder.

13. Defendant Fencon, Inc., ("Fencon") is a for-profit corporation organized under the laws of the state of South Carolina and has appointed Sean L. Liggins as its registered agent for service of process with an address of 1025 W 5th North Street, Summerville, SC 29484. Fencon is authorized to conduct and has conducted business in the state of South Carolina at times material hereto. During the relevant times described herein, Fencon contracted with Carolina Wrecking to provide services and equipment under demolition contracts with the U.S. Government.

## JURISDICTION & VENUE

14. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1367(a).

15. The Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a).

16. Venue is proper in the District of South Carolina pursuant to 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) because, at all relevant times, Defendants resided in this district, or transacted business within this district, or committed acts in violation of 31 U.S.C. § 3729 within the district.

## THE FALSE CLAIMS ACT

17. The federal Civil False Claims Act, as amended, provides in pertinent part that:

4

(a) Any person who (1) knowingly presents, or causes to be presented to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government, or (7) knowingly makes, uses or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,.... is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

(b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) had actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

(c) For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for an portion of the money or property which is requested or demanded.

31 U.S.C. § 3729.

## FACTUAL ALLEGATIONS

18. The Contracting Squadron of Joint Base Charleston, on behalf of the United States of America, issued contract FA4418-10-D-0006 on or about September 19, 2011 to Defendant Fencon Inc. for the demolition of buildings at Joint Base Charleston (the "Contract"). See **EXHIBIT A**.

19. According to the Contract, Defendant Fencon agreed to perform and provide equipment and personnel to demolish Building 411 at Joint Base Charleston; the price for this project was $91,539.30. **EXHIBIT A**, pp. 1 – 13.

20.     According to the Contract, Defendant Fencon also agreed to perform and provide equipment and personnel to demolish Building 520 at Joint Base Charleston; the price for this project was $17,254.55. **EXHIBIT A**, pp. 14 – 24.

21.     According to the Contract, Defendant Fencon also agreed to perform and provide equipment and personnel to demolish Building 346 at Joint Base Charleston; the price for this project was $2,796.70. **EXHIBIT A**, pp. 25 – 36. The documentation indicates an award date of March 26, 2011, but it is under the same contract number as the aforementioned two demolition projects.

22.     Defendant Fencon was the primary contractor on the Contract and, upon information and belief, has also been awarded other contracts to perform work for the United States Government.

23.     Defendant Fencon contracted with subcontractor Defendant Carolina Wrecking Inc. to perform demolition services under the Contract.

24.     According to its website, www.carolinawrecking.com, "Carolina Wrecking Inc. has been in the demolition business for "more than fifty years", "fulfilling demolition contracts for government at local, state, and federal levels, as well as for industry and individuals." See **EXHIBIT B**, Screenshot of Website. Its "Government" projects are also described on its website, as including, e.g., "Charleston AFB/Demolition", "Shaw AFB/Demolition", and "Fort Jackson/Phase 18."

25.     On September 25, 2011, an "Amendment of Solicitation/Modification of Contract" went into effect and became binding terms of the Contract. See **EXHIBIT A**, p. 37. By its express terms, one of the purposes of this modification was to "Incorporate the new Wage Determination 2005-2473, Rev. (06/13/2011)." **EXHIBIT A**, p. 37.

26. "Wage Determination 2005-2473, Rev. (06/13/2011)" is a wage determination issued by the Department of Labor pursuant to the SCA which sets the minimum allowable hour rate per employee classification which Defendants could lawfully pay employees under the Contract. Wage Determination 2005-2473, Rev. (06/13/2011) is expressly included as a term of the Contract and is provided in full therein. **EXHIBIT A**, pp. 40 - 49.

27. The SCA requires that all workers must be paid the prevailing wage rate according to their job classifications and in accordance with the SCA. 41 U.S.C. § 351; FAR 52.222-41(c). Wage determinations, as determined by the Department of Labor, under the SCA were required to be and were included as express terms and conditions of the Contract. FAR 52.222-41; see **EXHIBIT A**, pp. 37 - 50. These wage determinations represent the "prevailing wage" for each classification of worker and are the wages Fencon and any subcontractor under the Contract, including Carolina Wrecking, were required to pay its workers, including Relator and other employees who have provided affidavits attached as **Exhibit C**.

28. As the primary contractor and as the party to the contract to the United States Government, Defendant Fencon owed a non-delegable duty to all workers on the job to ensure they were paid the prevailing wages, in accordance with the terms of the Contract and the SCA. As a subcontractor under the Contract, Defendants Carolina Wrecking and President Charles Dowey also owed a non-delegable duty to all its workers on the job to ensure they were paid the prevailing wages, in accordance with the terms of the Contract and the SCA. The duty to pay workers prevailing wages exists regardless of whether workers are paid by the general contractor or by a sub-contractor.

29. Under the Contract, and according to Wage Determination 2005-2473, Rev. (06/13/2011), the prevailing wage determination for a "Truckdriver, Heavy" was $17.20 per

7

hour; the prevailing wages determination for a "Truckdriver, Medium" was $14.75 per hour; and the prevailing wages determination for a "Truckdriver, Light" was $13.98 per hour. **EXHIBIT A**, p. 46. The prevailing "health and welfare" benefit, to which all occupations of Wage Determination 2005-2473, Rev. (06/13/2011) were entitled, was an additional $3.59 per hour. Id. at p. 46. Other benefits allowed for all occupations included a tiered paid-vacation scheme and ten paid holidays per year. Id. Relator, and upon information and belief, no other laborers employed by Defendants received the full "health and welfare" benefit, or the other additional benefits.

30.   Relator Willie Cooley began work on the Contract on or about September 2011. See **EXHIBIT D** (Willie Cooley Base ID). He was employed by Carolina Wrecking as a dump truck/heavy truck driver and performed demolition services under the Contract. He had been employed by Carolina Wrecking since February of 2009 as a heavy truckdriver.

31.   Fencon and/or Carolina Wrecking paid an hourly rate of $13.00 to Relator for work performed under the Contract as a dump truck driver. See **EXHIBIT E** (Willie Cooley Pay Stub). This amount was less than the prevailing wages for a Heavy Truckdriver under the SCA, and, in fact, less than the prevailing wage for any truckdriver under the SCA. Upon information and belief, none of the truckdrivers working on this contract were paid the appropriate wage under the SCA, and few, if any, of the other laborers who worked for Carolina Wrecking were paid their prevailing wages, either. See **EXHIBIT C**. For example, Tony Dreher was only paid $9.00 per hour throughout his employment, well under the SCA prevailing wage. Similarly, Wendell Harry and Leroy House, both truck drivers, were paid wages well under the SCA prevailing wage. Additionally, Relator and other employees were only paid a fraction of their "health and welfare" per diem due: $50 per week instead of approximately $143.60.

32. During Relator's employment under the Contract, the Defendants, either acting individually or collectively, did not pay Relator and many other employees the prevailing wages for appropriate SCA job classifications, although the Defendants, on information and belief since the relevant documentation is in the Defendants' exclusive control, certified that they did to the United States Government. A woman named Memory Armstrong worked payroll for Carolina Wrecking, with assistance from David Poston, who frequently compiled employee timesheets for submission to the government, and Charles Dowey, who signed the checks. Wendy Dowey (daughter of Defendant Charles Dowey), on information and belief since the relevant documentation is in Defendants' exclusive control, also played a role in making these payments.

33. After the wage determination has been applied for and determined by the Department of Labor, the prime contractor must submit weekly payroll certifications to the federal government upon commencement of the project. These certified payroll reports are required on a weekly basis and are generally numbered consecutively.

34. A Statement of Compliance must also be signed and certified by the employer along with the Payroll Certifications. The purpose of the weekly Payroll Certifications is to document compliance with the SCA's prevailing wage determinations.

35. Defendants, including Charles Dowey, in addition to Carolina Wrecking employees Wendy Dowey, Memory Armstrong, and David Poston, were required to and, upon information and belief since the relevant documentation is in the Defendants' exclusive control, did make wage certification statements to the Government stating all workers were paid the prevailing wage rate for their respective job classifications. Defendants, including Charles Dowey, and in addition Carolina Wrecking employees Wendy Dowey, Memory Armstrong, and

David Poston, made false certifications and claims for payments on numerous occasions from the time numerous contracts were awarded to Defendants, until the completion of such jobs.

36.     Defendants, including Charles Dowey, and in addition Carolina Wrecking employees Wendy Dowey, Memory Armstrong, and David Poston, had actual knowledge that the representations to the Government were false and they intended to deceive the Government in making these representations and to profit from them. In the alternative, said Defendants acted with a reckless disregard for the truth of the information contained in the representations made to the Government in the wage certifications. The Government reasonably relied on these misrepresentations.

37.     The Defendants profited by retaining the difference between the amount they claimed and represented to the Government that would be paid to the workers, and the amount that was *actually* paid, to the great detriment of employees like Relator Cooley, who was forced to take side jobs to try and make ends meet.

38.     The misrepresentations of payments to the Government were widespread and discovery will reveal additional misrepresentations and deceptions made by Defendants to the Government relating to Defendants' failure to pay its employees required prevailing wages.

39.     Relator believes that other employees worked as truckdrivers for Carolina Interior Demolition Specialties, Inc., an affiliate of Defendant Carolina Wrecking ("CIDS"), making $14.00 per hour, which, on information and belief, was below the prevailing wage rate of $14.05, plus $3.18 for fringe, for Richland County, South Carolina.  See **EXHIBIT G (Willie Sligh Pay Stubs).**

40.     Carolina Interior Demolition Specialties ("CIDS") was, on information and belief, also owned by Defendant Charles Dowey during the relevant timeframe, since the company is,

10

on information and belief, located at 141 Cort Rd., Columbia, SC 29203, which is also Dowey's address of record as owner for various properties in Columbia, and the construction office address for Carolina Wrecking, according to its website. See **EXHIBIT H** (Dowey Asset Report, listing 141 Cort Rd. in his name on mortgages, etc.); **EXHIBIT I** (Carolina Wrecking website screen capture). CIDS subsequently was bought outright by then-VP of Carolina Wrecking Don L. Buchanan.

41. Since 2011, Fencon and Carolina Wrecking have serviced government contracts, and such contracts have been approximately 80% of Carolina Wrecking's business up to present. Upon information and belief since the relevant documentation is in the Defendants' exclusive control, for all of this government work, Carolina Wrecking has failed to pay its workers prevailing wages, while falsely certifying that it has.

42. The total value of Dowey's known twenty land assets, primarily located in South Carolina, with several in North Carolina, is $2,586,408. **EXHIBIT H**. On information and belief, Dowey also, during the years of the Contract, had owned valuable personal property and other realty such as a yacht with a bowling alley and dance floor, a dump site, hundreds of residential rental units, a trailer park, a log cabin mansion in Tennessee, and multiple sports cars. Dowey has profited significantly and led a luxurious lifestyle from his underpayment of employees. Relator, for example, frequently washed Dowey's multiple cars, upon Dowey's request, in order to make additional money to make ends meet.

43. As a result of these misrepresentations, the Government, Relator and many similarly situated employees have been damaged.

44. Relator has direct and personal knowledge of the true set of facts that Carolina Wrecking did not pay him and other employees the prevailing wage rates as required by contract and the SCA.

45. As an employee of Carolina Wrecking, Relator also worked at other military bases under contracts with the United States of America. Relator worked as an employee of Carolina Wrecking under federal contracts at Fort Jackson in Columbia, South Carolina; Shaw Air Force Base in Sumter, South Carolina; and Seymour-Johnson Air Force Base in Goldsboro, North Carolina. Beginning in 2008, Fencon had demolition contracts (FA4803-09-C-0013 and FA4803-09-D-0009) totaling approximately $240,000 with Shaw AFB in Sumter, SC involving, on information and belief, since the relevant documentation is under Defendants' exclusive control, Relator and other affiants to this complaint. See **EXHIBITS C, J** (Contracts between Fencon and Shaw AFB, affidavits of Tony Dreher and Wendell Harry).

46. Relator, a heavy truck driver, was never paid in excess of $13.00 per hour while employed as a dump truck driver for Carolina Wrecking, which is below the required prevailing wage for all truck drivers. On information and belief, since the relevant documentation is under Defendants' exclusive control, Carolina Wrecking also paid Relator less than the required prevailing wages, as set by the Department of Labor, for Relator's employment under other federal contracts, including those at Fort Jackson, Shaw Air Force Base, and Seymour-Johnson Air Force Base.

47. On information and belief, since the relevant documentation is under Defendants' exclusive control, Carolina Wrecking paid other employees, including Mr. Dreher and Mr. Harry, less than the required prevailing wages set by the Department of Labor, under the Contract and under other federal contracts. Carolina Wrecking continued to pay its employees

12

less than prevailing wages after Relator ceased working for Carolina Wrecking on or around December 9th, 2011.

48. On information and belief, since the relevant documentation is under Defendants' exclusive control, Carolina Wrecking failed to pay its employees prevailing wages under other federal contracts. Under these contracts, Carolina Wrecking was required to and did make certifications to the United States government that it paid its employees prevailing wages set by Department of Labor under the SCA.

49. Carolina Wrecking and CIDS would be subcontractors on the same government demolition / asbestos-removal contracts. Charles Dowey, as President of both subcontractors, would employ approximately 20 workers for CIDS and 35 workers for Carolina Wrecking. Each worker worked approximately 40 hours per week. These two firms serviced government contracts approximately 80% of the year for the years 2011 to the present.

50. On information and belief, since the relevant documentation is under Defendants' exclusive control, Charles Dowey partly owned another company, CIDS, that employed illegal Mexican immigrants but falsified employment records to show that they were not illegal immigrants. The projects of CIDS usually centered on asbestos removal. Charles Dowey would have his daughter Wendy falsify these records, and the workers would be paid less than prevailing wages, and the Doweys would create false IDs to get the workers onto the job sites.

51. Relator previously complained regarding the underpayment, first to the South Carolina Department of Labor Board in 2012, then to the Federal Department of Labor's office in Washington, D.C. Relator is the original source within the meaning of the False Claims Act because his knowledge adds independently and materially to any prior complaints, and he has volunteered his information with the U.S. Government before filing this complaint.

13

## FIRST CAUSE OF ACTION
### False Claims Act: Presentation of False Claims
### 31 U.S.C. § 3729(a)(1)

52. Each and every allegation set forth hereinabove is hereby repeated as if fully incorporated herein.

53. Defendants, by or through its agents, officers, subcontractors, or employees, knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to the United States Government.

54. By virtue of the false or fraudulent claims submitted by Defendants, the United States of America has suffered material damages and is therefore entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§ 3729 et seq.

## SECOND CAUSE OF ACTION
### False Claims Act: Making or Using a False Record or Statement
### 31 U.S.C. §3729(a)(2)

55. Each and every allegation set forth hereinabove is hereby repeated as if fully incorporated herein.

56. Defendants, by or through its agents, officers, subcontractors, or employees, knowingly made, used or caused to be made or used, false records or statements in order to get false or fraudulent claims paid or approved by the United States Government.

57. By virtue of the false records or statements submitted by Defendants, the United States of America has suffered material damages and is therefore entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§ 3729 et seq.

## THIRD CAUSE OF ACTION
### False Claims Act: Conspiring to Defraud the United States
### 31 U.S.C. § 3729(a)(3)

58. Each and every allegation set forth hereinabove is hereby repeated as if fully incorporated herein.

59. Defendants, by or through its agents, officers, or employees, knowingly conspired with third parties to defraud the United States Government by getting false or fraudulent claims allowed or paid.

60. Defendants, by or through its agents, officers, subcontractors, or employees, committed overt acts in furtherance of such conspiracy.

61. By virtue of this conspiracy to defraud the United States of America, Defendants, the United States of America has suffered material damages and is therefore entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§ 3729 et seq.

## FOURTH, AND ALTERNATIVE, CAUSE OF ACTION
### Quantum Meruit / Unjust Enrichment

62. Each and every allegation set forth hereinabove is hereby repeated as if fully incorporated herein.

63. Plaintiff conferred a benefit upon Defendants by providing payment on federal projects of at least $111,590.55 to Defendants.

64. Defendants realized and retained certain benefits from the funds Plaintiff has paid to Defendants.

65. Defendants have been unjustly enriched and the Plaintiff is therefore entitled to compensatory damages to be determined by a jury.

## PRAYER FOR RELIEF

66. Wherefore, Plaintiff-Relator respectfully requests this Court to enter judgment against Defendants as follows:

   a. That the United States of America be awarded treble the amount of actual damages sustained because of Defendants' fraudulent activity and submission of false claims for payment out of the United States Treasury.

   b. That civil monetary penalties of $11,000 be imposed for each and every false claim or invoice presented to the United States Government by Defendants.

   c. That pre-judgment and post-judgment interest be awarded.

   d. That those reasonable attorneys fees, costs and expenses, which the Plaintiff-Relator necessarily incurred in bringing the action, be awarded.

   e. That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act violations alleged herein.

   f. That the Court grant any other relief as may be proper and just.

## JURY DEMAND

Plaintiff demands a jury trial on all issues contained herein.

Respectfully submitted,

s/Ben Whaley Le Clercq

Ben Whaley Le Clercq (Fed. ID #7453)
Scott Riddell (S.C. Bar #102809)
Le Clercq Law Firm
Ben@LeClercqLaw.com
Scott@LeClercqLaw.com
708 South Shelmore Blvd. #202
Mount Pleasant, SC 29464
Phone (843) 722-3523
Fax (843) 352-2977
*Counsel for Plaintiffs*

## VERIFICATION

I, Willie Cooley, after first being duly sworn, hereby declare under penalty of perjury, that I have reviewed all of the allegations contained in the above styled complaint, as well as the allegations in the attachments to the complaint, and, regarding the allegations of which I have personal knowledge, I know or believe them to be true. Regarding the allegations of which I do not have personal knowledge, I believe them to be true based on specified information, documents, or both.

Date: January 27, 2017

Willie Cooley